UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:23-CV-101-CRS

LILA MEADOR,
individually and on behalf of M.M., a minor                              PLAINTIFF

v.

COMMONWEALTH OF KENTUCKY, *et al.*                               DEFENDANTS

### MEMORANDUM OPINION

Plaintiff Lila Meador, individually and on behalf of her daughter, M.M., *pro se*, filed a Complaint against the Commonwealth of Kentucky; Deaconess Gateway Hospital; Owensboro Health Regional Hospital; Nicole; Dr. Angela; Michael; Security; Kingdom Hall of Jehovah's Witnesses; Andrea Payne; Paula Hazel; Retina Dupriest; John Burlew; Josh Settles; Dr. Phillips; Dr. Pile; Dr. Cohen; and Dr. Estep on September 11, 2023. [DN 1]. Simultaneously, Meador petitioned the court for leave to proceed *in forma pauperis*. [DN 3]. The court granted Meador leave. [DN 5].

### LEGAL STANDARD

Because Meador is proceeding *in forma pauperis*, the court must initially review the instant action. *See* 28 U.S.C. § 1915(e)(2); *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds*, *Jones v. Bock*, 549 U.S. 199, 203 (2007). Upon review, the court must dismiss a case at any time if the court determines that the action is "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). When screening the Complaint, the court must construe it in the light most favorable to Meador and accept well-pleaded allegations as true. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010). And while a reviewing court liberally construes

*pro se* pleadings, *see id.*; *Boag v. McDonald*, 454 U.S. 364, 365 (1982), a complaint must include "enough facts to state a claim to relief that is plausible on its face" to avoid dismissal, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## MEADOR'S COMPLAINT

Meador prepared her Complaint using the United States Courts' *pro se* "Complaint for Violation of Civil Rights (Non-Prisoner)" form. Under § II(A) of the form, which concerns jurisdiction, Meador indicated that she is "bringing suit against State or local officials (a § 1983 claim)." [DN 1 at 3]. Then, in § II(B), which prompts Meador to list "what federal constitutional or statutory right(s)" she claims "are being violated by state or local officials," she wrote the following: "Constitutional Civil Rights Violations; Indian Child Welfare Act; Federal." [*Id.*]. Meador included another copy of the same page of the form in her Complaint, and in § II(B) on that sheet she wrote the following: "Federal Indian Child Welfare Act; (ICWA); withholding evidence of child abuse by John Burlew." [*Id.* at 5]. A third copy of the same page of the form is included in Meador's Complaint, and in § II(B) of the third sheet Meador wrote the following:

> Rights of mother; L.M. denied ruling out whether child M.M. has phenylketonuria; which might be causing diabetic symptoms or diagnosis; communication with care of daughter; L.M. request for daughter M.M. be seen by another second opinion professional endocrinologist doctor; rights of mother; by birth mother of M.M. undue separation of child and mother premeditated; unreasonable request; for separation; due to prejudice of mother; upon arrival to O.H.R.H. March 20, 23. {Federal Indian Child Welfare Act;}

[*Id.* at 7].

Next, in § III(C), which prompts a plaintiff to state "the facts underlying [the] claim(s)," Meador wrote the following:

> Chad Sanders; called Dr. Phillips; recommended taking M.M. directly to the O.H.R.H.; (L.M. took M.M. directly to O.H.R.H.) L.M. asked on call physician; Dr. Pile to check Daughter M.M. to see if she had phenylketonuria; which might be causing diabetic symptoms as mother L.M. has phenylketonuria; and had similar

ketoacidosis symptoms at age 14. L.M. previously asked Pediatric Physician Dr. Phillips to assess daughter's metabolic state; in regards to symptoms; Dr. Phillips refused and ignored mother's requests; prior to; March 20, 23. Upon arrival, Lila Meador requested daughter be seen at Deaconess Gateway; Newburgh; Dr. Cohen; was extremely upset and livid at L.M. requests; Dr. Cohen failed to produce phenylketonuria test results as prior promised to rule out.

[*Id.* at 8].

And, in § IV, which prompts a plaintiff to "describe your injuries and state what medical treatment, if any, you required and did or did not receive," Meador wrote the following:

Allegations of perjury (biased information source of opinion of Lila Meador) by Dr. Estep; led to undue separation of [M.]M. traumatized and undue duress; psychologically manipulated against mother; while in Deaconess Gateway Hospital; during stay of illness; new diagnosis; mother not allowed to comfort daughter; being unduly separated and accused of being inadequate; due to biased misrepresentation; attested to Nicole; supervisor; Deaconess Gateway; L.M. perception negative; based on biased information sources; Dr. Estep; perjury admitted to the court; 3/23/23–3/28/23[.]

[*Id.* at 9].

Finally, in § V, which prompts a plaintiff to "[s]tate briefly what you want the court to do for you," Meador wrote the following:

Request the Cabinet of Kentucky to Return daughter; expediently to mother; reunification; due to biased information source; perjury allowed separation is a violation of Mother and Daughters [sic] M.M. Civil Rights; being protected by the constitution; and prosecutors [sic] office; failure to adequately protect mother and daughter from injustice; admission of fault; and emotional duress injury to family; removal of Andrea Payne; Paula Hazel; Retina Dupriest; [illegible]; Jerry Johnson; daughter doesn't require subject to supervision; visits; uncalled for; because attorney; {Jerry Johnson; anger; outburst;} Sexton; provided evidence at mother's closing; L.M. is truthful; and adequate level of care[.]

[*Id.*]. Based on this prayer for relief, the court construes Meador's Complaint as seeking injunctive, not monetary, relief.

<u>**ANALYSIS**</u>

In a § 1983 action, a plaintiff must allege that a person acting under color of state law —
that is, an employee or agent of a state or municipal government — subjected the plaintiff to
"the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of
the United States. 42 U.S.C § 1983.

Thus, to maintain a § 1983 action, a plaintiff must show that the defendants acted under
color of state law. Here, Meador seeks to sue the Commonwealth of Kentucky; Deaconess
Gateway Hospital; a Deaconess supervisor named Nicole; a Deaconess doctor named Angela; a
Deaconess security supervisor named Michael; Owensboro Health Regional Hospital; Owensboro
Health doctors Phillips II, Pile, Cohen, and Estep; the Kingdom Hall of Jehovah's Witnesses in
Owensboro, Kentucky; Kentucky Cabinet for Health and Family Services social workers Andrea
Payne, Paula Hazel, and Retina Dupriest; Daviess County Attorney John Burlew; and prosecutor
Josh Settles. But Deaconess Gateway Hospital is a private hospital in Newburgh, Indiana,
Owensboro Health Regional Hospital is a private hospital in Owensboro, Kentucky, and the
Kingdom Hall of Jehovah's Witnesses is a religious organization in Owensboro. Consequently, all
three entities and their agents or employees are private actors, not state actors.

There are some circumstances in which a private actor may be deemed to have acted under
color of state law. *Brentwood Academy v. Tennessee Secondary School Athletic Assn.*,
531 U.S. 288, 295 (2001). However, that is the case only if "there is such a 'close nexus between
the State and the challenged action' that seemingly private behavior 'may be treated as that of the
State itself.'" *Id.* (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349 (1974)). Meador
does not allege any facts supporting such a nexus here. Thus, Meador fails to assert a cognizable
§ 1983 claim against Deaconess Gateway Hospital, Nicole, Michael, Owensboro Health Regional

Hospital, Drs. Angela, Phillips II, Pile, Cohen, and Estep, and the Kingdom Hall of Jehovah's Witnesses. Accordingly, Meador's claims against these defendants will be dismissed for failure to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

Having disposed of non-state actors, the court turns to the second § 1983 element: that Meador was deprived of a right secured by federal law or the U.S. Constitution. Here, Meador asserts that the Indian Child Welfare Act is the federal law at issue. [*Id.* at 3, 5, 7].

"In the usual course, state courts apply state law when placing children in foster or adoptive homes. But when the child is an Indian, a federal statute—the Indian Child Welfare Act— governs." *Haaland v. Brackeen*, 599 U.S. 255, 263–64 (2023). "The Indian Child Welfare Act of 1978 (ICWA), 92 Stat. 3069, 25 U.S.C. §§ 1901–1963, was the product of rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes." *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 32 (1989).

The ICWA "establishes federal standards that govern state-court child custody proceedings involving Indian children." *Adoptive Couple v. Baby Girl*, 570 U.S. 637, 642 (2013). Any "'party seeking' an involuntary termination of parental rights to an Indian child under state law must demonstrate that 'active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.'" *Id.* at 643 (quoting 25 U.S.C. § 1912(d)). Thus, "a state court may not involuntarily terminate parental rights to an Indian child 'in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the

continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.'" *Id.* (quoting 25 U.S.C. § 1912(f)).

Although Meador invokes the ICWA, Meador never alleges that her daughter, M.M., is an Indian child within the meaning of that Act. Additionally, Meador does not advance any well-pleaded factual allegations in support of her contention that the defendants unduly separated M.M. from Meador, nor that in effecting the separation the defendants failed to comply with the Act. Meador's Complaint, on its face, contains only one well-pleaded factual allegation: that certain non-state actor defendants declined to test M.M. for phenylketonuria. There are no facts alleged that describe how the purported separation of M.M. from Meador occurred, nor that explain why it occurred. Consequently, Meador does not allege "enough facts to state a claim to relief that is plausible on its face," so her Complaint must be dismissed. *Twombly*, 550 U.S. at 570.

Accordingly, Meador's claims will be dismissed for failure to state a claim for which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). A separate Order will be entered contemporaneously with this Memorandum Opinion.

December 8, 2023

**Charles R. Simpson III, Senior Judge**
**United States District Court**

cc:    Plaintiff, *pro se*